
FILED
2008 Sep-09 PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIM M. BURGIN, o/b/o C.B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 08-G-0115-S |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Kim M. Burgin, o/b/o C.B., brings this action on behalf of her son, C.B., pursuant to the provisions of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income under Title XVI of the Act.

Plaintiff filed an application for child's Supplemental Security Income benefits. Benefits were denied at the administrative level and an administrative law judge found plaintiff not to be eligible for benefits. This decision became final when the Appeals Council denied a request for review.

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards

were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## DISCUSSION

The definition of Child's SSI disability provides that a claimant under the age of eighteen shall be considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity." 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); See 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings). The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924. The three-step process requires a child to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically equal, or functionally equal the severity of an impairment in the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment listed in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are functionally equivalent in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926a(a). For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In accordance with the regulations, ALJ Jerome L. Munford determined the plaintiff[1] had not engaged in substantial gainful activity. [R 20]. The ALJ then found the plaintiff's atopic dermatitis, communication disorder characterized by delayed expressive and receptive language skills, and asthma were severe within the meaning of the Commissioner's regulations. [R. 29]. At the final step of the sequential evaluation, the ALJ found the plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment [Id.].

---

[1] Further references in this opinion to the plaintiff will be to the child, C.B., on whose behalf this action was brought.

In assessing the plaintiff's functional limitations, the ALJ found that the plaintiff had marked limitations under domain six, Health and Physical Well-Being:

> The medical evidence of record shows that the claimant has chronic asthma that requires the daily use of inhalers and a nebulizer to maintain control (Exhibits 1F, 9F, 11F, and 12F). He has asthma exacerbations due to seasonal allergies and viral infections, however, he has never required hospitalization or intubation to treat the symptoms. When the claimant was treated in the emergency room in March 2007, Dr. Frascogna described the symptoms as moderate and not overly severe (Exhibit 12F). The record also shows that the claimant has chronic eczema that requires the daily use of topical ointments and bath medications to control (Exhibits 1F, 6F, and 9F). However, when the claimant was examined for his five year old check up his asthma and eczema were both described as well controlled (Exhibit 9F). There is no evidence in the record that the claimant has extreme limitations in this domain.

[R. 28]. Therefore, if the ALJ had found a marked limitation in any one of the remaining five domains, he would have found the plaintiff disabled.

In order to find the plaintiff was not disabled, the ALJ ignored an uncontroverted report from Jerri Smith, MCD, CCC-SLP[2], a speech-language pathologist, and expert witness, of Over the Mountain Speech, Language, and Learning Services, LLC. At the request of Disability Determination Service, the plaintiff was evaluated and tested on December 14, 2005, when he was four years and two months old. The Preschool Language Scale-3 was administered, and the plaintiff scored 64 (first percentile) for Auditory

---

[2] "MCD" stands for "Master of Science in Communication Disorders," and "CCC-SLP" is an abbreviation of "Certificate of Clinical Competency-Speech-Language Pathology." In passing, the ALJ mentioned this examination, but incorrectly identified the examiner as "Ashley McCrary, MS, CCC-SLP." [R. 21]. Ms. McCrary's name does appear on the letterhead of the report, but the evaluation and testing were conducted by, and the report was signed by, Ms. Smith. The ALJ's error is indicative of his ignorance of the substance of this report.

Comprehension, and 63 (first percentile) for Expressive Communication. [R. 199]. His Total Language score was 59 (first percentile), which placed him at an age equivalent of two years and six months. [Id.]. The speech-language pathologist reported:

> [C.B.] presents with a <u>severe communication disorder</u> characterized by delayed expressive and receptive language skills. He appears to be acquiring language in a normal developmental pattern, but at a delayed rate. <u>This puts him at risk both academically and socially</u>.

[R. 199](emphasis added). The speech-language pathologist's clinical impression "is of a <u>severe</u> language delay with a good prognosis for improvement with intervention." [Id.](emphasis added).

Under domain one, Acquiring and Using Information, the ALJ found that the plaintiff had less than marked limitations:

> The student profile from the Head Start program states that the claimant had worked on the improvement of his spoken language skills (Exhibit 15E). It noted that the claimant continued to use one word responses to answer questions, however, he was speaking more than at the beginning of the school year. The claimant had learned to say the alphabet although he needed to develop letter-sound associations. He was able to write his name and his articulation of sounds had not been a factor in limiting his communications. The claimant was described as an enthusiastic learner that readily answered questions that he knows. While the claimant has some limitations in this domain due to his speech/language delay, <u>there is no evidence in the record to support that he has marked or extreme limitations in this domain</u>.

[R. 26](emphasis added). Had the ALJ properly considered the report of the speech-language pathologist, whose testing had placed the plaintiff in the first percentile for total language ability[3], he would have found the plaintiff had at least a marked impairment in

---

[3] The testing revealed that C.B.'s total language skills were nearly two years
(continued...)

5

this domain.  The ALJ's conclusion that "there is no evidence in the record to support that he has marked or extreme limitations in this domain" is not supported by substantial evidence.  [R. 26].

Under domain three, Interacting and Relating with Others, the ALJ found that the plaintiff has no limitations:

> There is no evidence and no testimony that the claimant has any limitations in this domain.  The Head Start profile on the claimant stated that he was a well mannered student who readily answered questions (Exhibit 15E).

[R. 27].  An issue in this domain is how well the plaintiff develops and uses the community's language.  Had the ALJ properly considered the report of the speech-language pathologist, he would have found the plaintiff had at least a marked impairment in this domain.  His conclusion that "[i]n this domain, the claimant has no limitations" is not supported by substantial evidence.  [Id.].

---

[3] (...continued)
behind his chronological age:

> In conversation, [C.B.] spoke in phrases and incomplete sentences.  He was unable to follow directions and name pictures for articulation testing without cues.  His responses were, for the most part, on topic and appropriate, but much like those of a younger child, which is consistent with test scores and age equivalents reported above.
>
> On the test, [C.B.] was able to recognize action in pictures, understand use of objects, understand pronouns and identify colors.  He was unable to understand part/whole relationships, group objects, and understand negatives.  Expressively, he combined up to 4 words in spontaneous speech, used plurals, and used *ing* endings.  He was unable to answer questions, produce basic sentences, use possessives, and tell how objects are used.

[R. 199](emphasis supplied).

As he has done many times in the past, ALJ Munford has misstated the record, and has violated his oath to follow the law. There is no reason this case should be before this court–the evidence shows that the plaintiff has at least marked impairments in three of the six domains. Therefore, his impairments functionally equal the Listings.

**CONCLUSION**

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 9 September 2008.

    _____
    UNITED STATES DISTRICT JUDGE
    J. FOY GUIN, JR.